Robert S. Friedman, Esq.
Malani J. Cademartori, Esq.
Mark E. McGrath, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
E-mail: rfriedman@sheppardmullin.com
mcademartori@sheppardmullin.com
mmcgrath@sheppardmullin.com
bwolfe@sheppardmullin.com

*Counsel for SageCrest II, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BARQUET GROUP, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-13116 (MG) |
| In re:<br><br>RAMIS BARQUET,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-13117 (MG) |

**LIMITED OBJECTION OF SAGECREST II, LLC TO DEBTORS' MOTION**
**FOR ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES**

SageCrest II, LLC ("**SageCrest**"), a creditor and party-in-interest in this case, by and through its undersigned counsel, submits this limited objection in response to the *Motion Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure for Order Directing Joint Administration of Chapter 11 Cases*, dated June 29, 2011 [Case No. 11-13116 Dk. 5; Case No. 11-13117 Dk. 8] (the "**Motion**") of Ramis Barquet ("**Mr. Barquet**") and Barquet Group,

Inc. (the "**Barquet Group**", and together with Mr. Barquet, the "**Debtors**"). In support of this limited objection, SageCrest states as follows:

## BACKGROUND

1. On June 28, 2011 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. When the Debtors commenced their bankruptcy cases, they were less than 24 hours away from facing the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (the "**Connecticut Court**") for, among other things, their contempt of a court order entered in an adversary proceeding commenced by SageCrest against the Debtors and Helena Barquet ("**Mrs. Barquet**", and together with the Debtors, the "**Defendants**").

3. Specifically, on March 2, 2011, SageCrest, a debtor-in-possession in a bankruptcy case filed on August 17, 2008 (the "**SageCrest Petition Date**"), and currently pending before the Connecticut Court under chapter 11 of the Bankruptcy Code, commenced an adversary proceeding against the Debtors under Case No. 11-05020, which was later amended to add Mrs. Barquet as a defendant (the "**Litigation**"). In the Litigation, SageCrest seeks to recover over $8 million due by the Barquet Group under a Secured Note, dated September 27, 2004, between the Barquet Group and SageCrest, as assignee of ACG Finance Company, LLC, as amended (the "**Note**"), which was secured by various pieces of fine art (the "**SageCrest Collateral**") and was personally guaranteed by Mr. Barquet under a Guaranty dated June 3, 2005 (the "**Guaranty**").

4. Additionally, as detailed in SageCrest's Amended Complaint, dated April 26, 2011 [Ct. Bankr. Case No. 11-05020 Dk. 30] (the "**Amended Complaint**"), SageCrest sought to recover damages from the Defendants for, *inter alia*, conversion, fraud and unjust enrichment based on the Defendants' dissipation of the SageCrest Collateral and diversion of the proceeds from such sales out of the Barquet Group to finance the Barquets' personal expenses and lifestyle.

5. Specifically, the Debtors have engaged in the practice of selling, without SageCrest's consent, various pieces of art owned by the Barquet Group that comprise the SageCrest Collateral and, instead of turning over the proceeds from such sales to SageCrest or otherwise repaying the Note, improperly retaining the funds and fraudulently transferring those funds to pay for, among other things, the Barquets' personal living expenses.

6. For example, in March 2011, the Barquet Group admitted that it had sold, transferred or otherwise disposed of 16 pieces of art comprising part of the SageCrest Collateral for approximately $2 million, after the SageCrest Petition Date, without SageCrest's consent and in violation of the automatic stay of section 362 of the Bankruptcy Code in place in SageCrest's bankruptcy case. Mr. Barquet has fraudulently transferred or has caused the Barquet Group to fraudulently transfer the proceeds of such sales out of the Barquet Group to support or pay for the Barquets' lifestyle, including, among other things, fraudulently transferring such funds to Mrs. Barquet and to the Barquets' oldest daughter, even though neither Mrs. Barquet nor her daughter are employees of the company.

7. As detailed in the Amended Complaint, the Barquets have used the Barquet Group's bank account to pay their personal expenses for, among other things, the following:

- mortgages on apartments owned by and lived in by the Barquets and their youngest daughters, Ines and Isabella;

- the education of the Barquets' youngest daughters at The Spence School, an elite private school located on the Upper East Side of Manhattan, at a cost of in excess of $36,000 per child per year;

- clothing and accessories purchased at numerous stores such as Bergdorf Goodman, Saks Fifth Avenue, Chloé, Barneys New York, Hugo Boss, Balenciaga, Hermes of Paris, Prada, Gap, and J Crew;

- attending concerts and Broadway shows; and

- dining at fine restaurants in Manhattan such as Nobu, Antica Bottega Del Vino, Buddakan, Le Bilboquet, and Fishtail.

8. Additionally, SageCrest has learned that Mr. Barquet has repeatedly withdrawn cash from the Barquet Group's bank account for unspecified personal uses and has regularly transferred large amounts of cash from the Barquet Group's accounts to his own account. In fact, in the *Affidavit Pursuant to Local Bankruptcy Rule 1007-2 Affidavit [sic] and in support of First Day Motions* [Case No. 11-13116 Dk. 2; Case No. 11-13117 Dk. 2], Mr. Barquet admits that "[d]uring the last several years, I. . . fell into the unfortunate habit of taking no specific salary but, instead, drawing discrete amounts to be charged to my account." Affidavit at ¶ 8.

9. Further, the Debtors have repeatedly and affirmatively misrepresented the location and status of the SageCrest Collateral in response to inquiries from SageCrest. For example, on February 19, 2010, in response to SageCrest's repeated requests, the Barquet Group provided an action plan to pay down the Note, which identified most of the SageCrest Collateral as well as other pieces of art that the Barquet Group was offering as additional collateral. It was later revealed that all of the pieces of SageCrest Collateral identified in the action plan had already been sold on or before February 19, 2010, and that Mr. Barquet knew that those pieces had been sold prior to submitting the action plan.

10. Especially telling is Mr. Barquet's invocation of the Fifth Amendment. During his court-ordered deposition in connection with the PJR Motion (as defined below), Mr. Barquet

refused to answer any questions regarding the sale of the SageCrest Collateral and use of the proceeds, instead invoking his Fifth Amendment right against self-incrimination upon the advice of counsel present at the deposition, the same counsel the Debtors propose as chapter 11 counsel in these cases.

11. Based on the foregoing facts and certain other disclosures made by the Debtors during expedited discovery in connection with the Litigation, SageCrest filed a *Motion for Prejudgment Remedy and a Finding of Contempt against Barquet Group, Inc., Ramis Barquet, and Helena Barquet*, dated April 26, 2011 [Ct. Bankr. Case No. 11-05020 Dk. 31] (the "**PJR Motion**"), in which SageCrest sought the attachment and garnishment of property of the Defendants and an order of contempt against the Defendants for their violation of the automatic stay. On the eve of the hearing on the PJR Motion, SageCrest and the Defendants executed the Stipulated Term Sheet and Order, which was entered by the Connecticut Court on May 9, 2011 (the "**Court Order**") and which required the Defendants to, among other things, pay the sum of $1,850,000 to SageCrest. When the Defendants failed to make the payment and informed SageCrest that they had no intention of making the payment, in violation of the Court Order, SageCrest filed the *Motion for Enforcement of Order, Finding of Contempt, and Judgment against Defendant Barquet Group, Inc., Ramis Barquet, and Helena Barquet*, dated June 21, 2011 [Ct. Bankr. Case No. 11-05020 Dk. 55] (the "**Enforcement, Contempt and Judgment Motion**").[1] The day before the hearing on the Enforcement, Contempt and Judgment Motion, the Debtors commenced these bankruptcy cases.

---

[1] The Enforcement, Contempt and Judgment Motion was filed under seal with the Connecticut Court, and is available upon the Court's request.

## LIMITED OBJECTION

12. SageCrest objects to the relief sought in the Motion to the extent it seeks to consolidate the Debtors' monthly reporting requirements in any way.

13. Specifically, in the Motion, the Debtors "seek authority to file the monthly operating reports required by the U.S. Trustee Operating Guidelines on a consolidated or other basis that the Debtors determine, after consultation with the U.S. Trustee. The Debtors submit that this would further administrative economy and efficiency without prejudice to any party in interest and that the reports would accurately reflect the Debtors' interlocking business operations and financial affairs." Motion at ¶ 15.

14. The *Operating Guidelines and Reporting Requirements for Debtor in Possession and Trustees*, dated February 18, 2011 (the "**U.S. Trustee Operating Guidelines**"), provide that a debtor must file a monthly operating report in the form provided by the United States Trustee. *See* U.S. Trustee Operating Guidelines at p.4. The monthly operating reports allow the U.S. Trustee and the Debtors' creditors to monitor the Debtors' financial performance and monthly income and expenses during the pendency of the Debtors' bankruptcy cases.

15. Given the previous dissipation of the SageCrest Collateral and the Barquets' history of fraudulently transferring funds out of the Barquet Group to finance their lavish lifestyle, SageCrest submits that it and other creditors will continue to be prejudiced if the Debtors are permitted to consolidate their reporting requirements because important information about the Debtors' financial activities will be obfuscated (much as they were pre-petition).

16. Specifically, the Debtors have a history of failing to appropriately separate their finances and to respect corporate structures to the detriment of their creditors, which has lead to the Litigation and which, ultimately, is the reason behind the Debtors' bankruptcy filings. The Debtors also have a history of refusing to provide information about their financial activities and

have repeatedly blocked all of SageCrest's efforts to collect on the Barquet Group's undisputed obligations under the Note by, among other things, misrepresenting, on more than one occasion, the location and status of the SageCrest Collateral and refusing to provide information about the SageCrest Collateral or the proceeds thereof. In particular, during questioning by SageCrest about the location of the proceeds from the unauthorized sales of the SageCrest Collateral and the fraudulent transfers from the Barquet Group to the Barquets, Mr. Barquet invoked the fifth amendment privilege and refused to provide SageCrest with any information about its own collateral because such information could incriminate him.

17.     Given this history, the Debtors should not now be permitted to enjoy a lower reporting standard, which may have the effect of allowing them to engage in the same fraudulent activity in bankruptcy that they engaged in prior to bankruptcy, and to continue to obscure their financial activity to the detriment of their creditors. The Barquet Group and Mr. Barquet should be required to file separate monthly operating reports particularly because of the allegations that the Barquet Group has made fraudulent transfers to Mr. Barquet and his family. Consolidated reports would only make it more difficult to untangle and understand the Debtors' post-petition transactions and allow the Debtors to continue to conceal important information about their financial activities. Moreover in a signed personal financial statement that Mr. Barquet provided to SageCrest less than two months ago, he stated that he owned substantial income producing real estate, unrelated to the Barquet Group. Mr Barquet represented and warranted in the financial statement that this real estate had an aggregate market value of $5.1 million and generated $215,000 of rental income annually. Consolidated financial reporting will obscure and complicate the ability of creditors to track the operations of the two Debtors, which is of

particular concern when the Debtors have openly acknowledged that they disregard the separateness of the corporation and its sole shareholder.

18. Additionally, the Debtors have demonstrated a disregard for the rule of bankruptcy law by, among other things, violating the automatic stay in the SageCrest bankruptcy case by selling portions of the SageCrest Collateral without SageCrest's consent or knowledge and by blatantly violating the Court Order entered in the Litigation. In light of the Debtors' actions during the pendency of the SageCrest bankruptcy cases, there is a risk that diminishing the Debtors' reporting requirements will lead to a further abuse of the bankruptcy process. The Debtors, in employing the bankruptcy process, should be required to comply with the same reporting standards that are required of all other debtors, so that each of the Debtors is fully accountable to its creditors for its income and expenses, and each is required to provide full and detailed information about its financial activities on a separate and transparent basis.

19. As a result, SageCrest objects to the Debtors' request to file their monthly operating reports on a consolidated basis or any other basis that would diminish the amount of information and detail otherwise required to be provided by the Debtors about their monthly financial situation, including specifically the source and amounts of revenue to and payment of expenses by each of the Debtors on an individual basis.

## Conclusion

WHEREFORE, SageCrest respectfully requests that the Court, in any order granting the Motion, (i) order the Debtors to each file separate monthly operating reports specifically as

required by the U.S. Trustee Operating Guidelines; and (ii) grant such other and further relief as may be just and proper.

Dated: July 5, 2011
New York, New York

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

/s/ Robert S. Friedman
Robert S. Friedman, Esq.
Malani J. Cademartori, Esq.
Mark E. McGrath, Esq.
Blanka K. Wolfe, Esq.
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for SageCrest II, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, I caused a copy of the foregoing to be sent to the parties listed below in the manner indicated below, and by automatic ECF notice to those parties receiving ECF in the above-captioned case:

By: /s/ Blanka K. Wolfe
Blanka K. Wolfe, Esq.

***By First Class Mail***

Barquet Group, Inc.
532 West 24th Street
New York, NY 10011

Ramis Barquet
26 East 63rd Street
New York, NY 10021

Todtman, Nachamie, Spizz & Johns, P.C.
Attn:  Arthur Goldstein
       Barton Nachamie
       Janice Beth Grubin
425 Park Avenue
New York, NY 10022

Filardi Law Offices LLC
Attn: Charles J. Filardi, Jr.
65 Trumbull Street, Second Floor
New Haven, CT 06510

***By Hand Delivery***

United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

Honorable Martin Glenn
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, NY 10004-1408