**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BARQUET GROUP, INC. and RAMIS<br>BARQUET,<br><br>                                        Debtors. | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 11-13116 (MG)<br><br>(Jointly Administered) |

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO RECONSIDER AND VACATE ORDER EXPUNGING CLAIM NO. 43 AND DENYING MOTION TO AMEND CLAIM NO. 43

*A P P E A R A N C E S :*

JONES & ASSOCIATES
*Counsel for ACG*
1230 6th Avenue, 7th Floor
New York, New York 10020
By:    Roland Gary Jones, Esq.

-and-

LAW OFFICE OF IRA R. ABEL
*Counsel for ACG*
520 Eighth Avenue
New York, New York 10018
By:    Ira R. Abel, Esq.

LAW OFFICES OF GABRIEL DEL VIRGINIA
*Counsel for Ramis Barquet*
488 Madison Avenue, 19th Floor
New York, New York 10022
By:    Gabriel Del Virginia, Esq.

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
*Counsel for Barquet Group, Inc.*
425 Park Avenue
New York, New York 10022
By:    Barton Nachamie, Esq.
       Arthur Goldstein, Esq.

1

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
*Counsel for John D. Huber, as Liquidating Trustee of the SageCrest Liquidating Trust*
900 Third Avenue
New York, New York 10022
By:    John H. Drucker, Esq.

-and-

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
*Counsel for John D. Huber, as Liquidating Trustee of the SageCrest Liquidating Trust*
30 Rockefeller Plaza
New York, New York 10112
By:    Robert S. Friedman, Esq.
         Mark E. McGrath, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of ACG Credit Company, LLC ("ACG Credit"),

ACG Finance Company, LLC ("ACG Finance"), and Fine Art Finance, LLC ("Fine Art" and

together with ACG Credit and ACG Finance, the "Movants") to reconsider an order expunging

the claim of ACG Credit and ACG Finance filed in this case ("Claim No. 43").  The Movants

also now seek to amend Claim No. 43 if it is reinstated.  ACG Credit and AGC Finance filed

Claim No. 43 against Barquet Group, Inc. ("Debtor"), based on a loan and collateral assignment.

The Debtor moved to expunge the claim because the obligation on which it was based had

previously been assigned to another creditor of the Debtor, SageCrest II, LLC ("SageCrest"), and

SageCrest had also filed a claim in this case based on the assignment of the obligation.  On

February 15, 2012, the Court sustained the Debtor's objection and entered an order expunging

Claim No. 43.  The Movants now argue that they did not receive valid notice of the Debtor's

objection to Claim No. 43; they seek to have Claim No. 43 reinstated and also seek to amend the

claim to add Fine Art as an additional claimant.

For the reasons discussed below, the Court finds that the Movants have failed to establish that the Court should reconsider the order expunging the claim pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Moreover, even if the Court granted the motion, the Court concludes that the ACG Credit and AGC Finance are barred from amending Claim No. 43 to add Fine Art as an additional claimant.  Such an amendment would impermissibly amend the claim beyond what is permitted under the Bankruptcy Rules and the relevant case law.

## I.      BACKGROUND

### A.      Procedural Posture

On July 23, 2012, the Movants filed a motion (the "Motion") (ECF Doc. # 252) seeking (i) reconsideration and vacatur of this Court's February 15, 2012 order (the "Order") granting Debtor's objection (the "Claim Objection") to the proof of claim designated as Claim No. 43 (the "Original Claim") filed by ACG Finance and ACG Credit (together, the "Claimants") against the Debtor, and (ii) leave to amend the Original Claim in order to add Fine Art as a claimant.  In support of the Motion, the Movants rely on the affidavit of Ian Peck, the declaration of Genia Iartchouk, and the affirmation of Joshua H. Epstein, which are attached to ECF Doc. # 253 as Exhibits G, H, and I.

The Debtor filed an objection to the Motion (the "Debtor's Objection") (ECF Doc. # 259) and relies on the Affidavit of Janice B. Grubin (the "Grubin Affidavit") (ECF Doc. # 260).  Additionally, John D. Huber, as Liquidating Trustee of the SageCrest Liquidating Trust filed an objection to the Motion (the "SageCrest Objection") (ECF Doc. # 261) and relies on the declaration of Mark E. McGrath (the "McGrath Declaration") (ECF Doc. # 262) in support of its objection.

**B.      The History of the ACG Claim and the Debtors' Bankruptcy**

In an attempt to elude an enforcement action brought by SageCrest II, LLC ("SageCrest") against the Debtor and Ramis Barquet ("Ramis" and, together with the Debtor, the "Debtors"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 28, 2011. The Debtor is a New York corporation engaged in the business of exhibiting, buying and selling works of art. Ramis is Barquet Group's sole shareholder, officer and director and largest creditor. SageCrest is the Debtor's largest non-insider creditor.

Prior to the Petition Date, the Debtor (operating under its predecessor name, Galeria Ramis Barquet NY, Ltd.) obtained secured financing from ACG Credit. A Secured Loan Note dated September 27, 2004 (the "Note") was executed by the Debtor, as borrower, and ACG Credit, as lender. Fine Art, an affiliate of ACG Credit, also signed the Note solely as "Arranger." Under the Note, ACG Credit agreed to make the Loan (as defined in the Note) to the Debtor in accordance with the terms of the Note. There have been three amendments to the Note: Amendment No.1, dated November 9, 2004, altered the interest rate; Amendment No. 2, dated June 3, 2005, increased the maximum principal amount of the Loan to $6 million; and Amendment No. 3, dated October 31, 2007, among other things, extended the maturity date for the Note to October 31, 2008. A copy of the Note and the amendments are annexed to the Motion, collectively, as Exhibit B. Simultaneously with the execution of the Note, the Debtor executed an "Arranger's Agreement" with Fine Art (the "Arranger's Agreement"). A copy of the Arranger's Agreement is annexed to the Motion as Exhibit C. Pursuant to Section E of the Note, entitled "Security Interest," the Borrower granted ACG Credit a security interest in the "Collateral."[1] On or about March 17, 2006, ACG Credit assigned all of its interest in the Note

---

[1]      According to the Debtors and SageCrest, Fine Art was never granted a security interest in any collateral of the Debtor, and, in fact, never filed a UCC-1 financing to perfect any liens.

(as amended) to ACG Finance (the "APA Assignment").  A copy of the APA Assignment dated

March 17, 2006 is annexed to the Grubin Aff. as Exhibit B.

ACG Credit, ACG Finance and Fine Art are affiliated companies owned and controlled

by the same individual, Ian Peck ("Peck").  Peck is the president of these three entities.  (Peck

Aff. ¶¶ 1-2.)  Peck, the Movants, and other Peck entities became involved in disputes with

SageCrest in the years prior to the Debtors' bankruptcy filing.  To resolve the ongoing disputes

between them, a Settlement Stipulation and Mutual Release dated May 19, 2008 (the "Settlement

Stipulation") was executed by and between (i) SageCrest; Windmill Management LLC and Alan

Milton; and (ii) Peck and the following entities: ACG Credit; ACG Credit Company II, LLC;

ACG Finance; Art Capital Group; and Fine Art.  Pursuant to the Settlement Stipulation, ACG

Finance assigned the Debtor's Loan obligations under the Note and Note Amendments and a

guaranty signed by Ramis (the "Ramis Guaranty") to SageCrest.  A copy of the Settlement

Stipulation is annexed to the Motion as Exhibit E.

A Collateral Assignment dated May 19, 2008 (the "Collateral Assignment," annexed to

the Motion as Exhibit F) was also executed on the same date as the Settlement Stipulation.  The

Movants allege that the Collateral Assignment between Fine Art and ACG Finance, as assignor,

and SageCrest, as assignee, carved out from the assignment to SageCrest, all of Fine Art's rights

to receive any commissions, fees or expenses, including an Arranger's Fee, due under the loans

assigned by the Claimants to SageCrest.  (Mot. ¶ 25).  The Movants do not contend that they are

owed any other amounts, other than the previously mentioned fees, under the Loan and Note.

(*Id.* ¶ 30.)  However, SageCrest contends, relying upon a different provision in the Collateral

Assignment, that the carveout is inapplicable because the Movants are in default.[2]

### C.       The Objection to Claim No. 43

On October 28, 2011, ACG filed the Original Claim in the amount of $3,075,000,

asserting that it was secured by $14,000,000 of fine art and furniture.[3]  The Original Claim stated

that it was based on money loaned and attached a copy of the Note but no other documents.  On

January 12, 2012, the Debtor filed the Claim Objection seeking to disallow and expunge the

Original Claim pursuant to section 502(b)(1) of the Bankruptcy Code.

The Claim Objection stated that the Debtor had no liability on the Original Claim because

the Debtor's obligations under the Loan, Note, and Note Amendments had been assigned by

ACG Finance to SageCrest under the Settlement Stipulation.  Notably, as a result of the

Settlement Stipulation, any claim relating to the Debtor's Loan obligations would belong to

SageCrest.  And, in fact, SageCrest timely filed an amended proof of claim based on the Note in

the amount of $7,415,093.14, docketed as Claim No. 25-2.  SageCrest also filed an amended

proof of claim in Ramis Barquet's case (based on the Ramis Guaranty) in the amount of

$7,415,093.14, docketed as Claim No. 17-2.

---

[2]        SageCrest relies on the following language for its argument:

> However, if Assignee does not receive the Balance plus any Additional Interest
> and any Assigned Loans Costs in available funds on or before the expiration of
> the Grace Period and after five (5) business days written notice to Borrower and
> Assignor, then Assignor shall have no interest in the Assigned Loans unless and
> until all such amounts are paid to Assignee at which time this Collateral
> Assignment shall expire and be null and void.

(Collateral Assignment at 2.)

[3]        The Debtor and Ramis did not list any of the Movants on their Schedules because they understood that the
Movants' claims had been assigned to SageCrest pursuant to the Settlement Stipulation.  However, the Movants
concede that they did receive timely notice of the bar date from their other counsel, Pullman & Comley, LLC.  (Peck
Aff. ¶¶ 27-29.)

The Claim Objection was served upon the Claimants on January 12, 2012 at the address designated in the Original Claim.  The Debtor filed an affidavit of service attesting to that service.  (ECF Doc. # 119.)  Counsel for ACG did not respond to the Claim Objection and was not present at the hearing.  On February 15, 2012, the Court sustained the Claim Objection after requesting certain information pertaining to the assignment of the Note and subsequently entered an order sustaining the objection (the "Order").  (ECF Doc. # 146.)

### D.      The Movants' Arguments

The Movants claim that they did not receive service of the Claim Objection because it was served on the Movants' former address at 980 Madison Ave, Suite 305, New York, New York 10075.  (Peck Aff. ¶¶32-34.)  According to Mr. Peck, the Movants moved out of those offices "on or about January 2012," and their offices are presently located at 145 East 57th Street, New York, New York.  (Peck Aff. ¶ 32.)  Mr. Peck further explained ACG's procedures with respect to the receipt of mail and legal notices, and described how ACG had not received service of the Claim Objection.  The Movants further claim that they have not received one single written notice concerning the proceedings in these cases (Iartchouk Decl. ¶¶ 7-9) and first became aware that the Original Claim had been expunged on or about the second week of May 2012 when they retained counsel to follow-up and pursue their Original Claim.

The Movants also argue that the Court should reconsider the Order because the Debtor failed to follow the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Specifically, the Movants argue that the Debtor should have commenced an adversary proceeding to avoid the Movants' lien pursuant to Bankruptcy Rule 7001.  Therefore, according to the Movants, the Court's Order is void, and the Court may relieve the Movants from the Order pursuant to Rule 60(b).

The Movants further argue that reconsideration of the Order is proper because the Movants acted promptly when they discovered that the Original Claim had been expunged. Additionally, the Movants assert that allowance of the proposed amended claim will have no effect on the efficient judicial administration of the cases. The Movants also argue that reconsideration is proper because (1) denial of the Motion would effectively amount to a default judgment, (2) the Movants have a meritorious claim, and (3) no egregious behavior exists to deny the Motion. Finally, the Movants argue that they should be granted leave to amend the Original Claim to include Fine Art.

For the reasons discussed below, the Court finds that the Movants have not shown that reconsideration of the Order is warranted. Furthermore, the Court finds that even if reconsideration of the Order was warranted, the Court would deny Fine Art's request to amend the Original Claim. Accordingly, the Court **DENIES** the Motion.

## II.    DISCUSSION

### A. Reconsideration of the Order is Not Warranted in this Case

Bankruptcy Rule 9023 incorporates Rule 59 of the Federal Rules of Civil Procedure, which in turn regulates motions for amendment of a judgment. Under Bankruptcy Rule 9023, "reconsideration is proper 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal citations omitted). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003) (internal quotations marks and citation omitted). A motion for reconsideration may not be used "to enable a party to complete

presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995).

Bankruptcy Rule 9024 incorporates Rule 60, which sets forth the grounds on which a court may grant relief to a party from a final order.[4]  Bankruptcy Rule 9024 provides that relief from an order can be granted for a clerical mistake or for "mistake, inadvertence, surprise, excusable neglect," newly-discovered evidence, fraud, misrepresentation, misconduct, where the order is void or has been satisfied, released, or discharged or "is no longer equitable, or for any other reason that justifies relief" from the order.  FED. R. CIV. P. 60(a), (b).  The moving party bears a heavy burden because Rule 60 provides extraordinary relief and is, therefore, generally viewed with disfavor.  *Bowman v. Jack Bond* (*In re Bowman*), 253 B.R. 233, 240 (B.A.P. 8th Cir. 2000).

Excusable neglect is not defined in the Bankruptcy Code, but the Second Circuit has set forth a three factor test to determine whether excusable neglect exists in the context of a Rule 60(b) motion.  *See Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996); *In re FairPoint Commc'ns., Inc.*, 462 B.R. 75, 79-80 (Bankr. S.D.N.Y. 2012).  The *American Alliance* factors are: (i) whether the failure to respond was willful; (ii) the existence of a meritorious defense and (iii) the degree of prejudice that the non-movant would suffer if the court granted the motion.  *See Am. Alliance*, 92 F.3d at 61; *see also FairPoint*, 462 B.R. at 80.  Recent decisions

---

[4]        Rule 60(b) provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or {6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

from this jurisdiction have applied the *American Alliance* test in evaluating excusable neglect in

the context of reconsidering claims under section 502 of the Bankruptcy Code and Rule 60(b),

while stating that it is also appropriate to construe excusable neglect under the less lenient

*Pioneer* test.[5]  *See, e.g.*, *FairPoint*, 462 B.R. at 79-80 ("Although it is appropriate to construe

excusable neglect under the *American Alliance* test, it is also fitting to do so under the less

lenient Pioneer test"); *see also In re Coxeter*, No. 05-19146, 2009 WL 4893170, at *4 (Bankr.

N.D.N.Y. Dec. 10, 2009).

Based on the allegations in the Motion, the Movants appear to be seeking relief under

Rule 60(b)(1) (the "excusable neglect" standard) and under Rule 60(b)(4) (the void judgment

standard).  For the reasons discussed below, the Movants have failed to meet their burden under

both sections of Rule 60(b).

### 1.   *The Movants Have Failed to Establish Excusable Neglect*

#### a.   <u>The Claimants' Failure to Respond to the Claim Objection Was Not Willful</u>

With respect to a finding of "excusable neglect," first, it appears that the Claimants

failure to respond to the Claim Objection was not willful.  The Second Circuit has interpreted the

---

[5]        In cases where creditors have failed to file claims before the bar date despite having notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'"  *In re Lehman Bros. Holdings Inc*., 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting FED. R. BANKR. P. 9006(b)(1)).  The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'"  *Id*. (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993)).  "However, 'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'"  *Id*. (quoting *Pioneer Inv. Serv. Co*., 507 U.S. at 395).  The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating excusable neglect:  (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *Pioneer Inv. Serv. Co*., 507 U.S. at 395.  "The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant."  *In re Lehman*, 433 B.R. at 119-20.  Here, it appears that the Movants are attempting to circumvent the *Pioneer* test by seeking to amend the Original Claim.  However, as discussed below, the proposed amendment is impermissible.  If Fine Art seeks to file a claim against the Debtor at this point, it must move to file an untimely claim under Bankruptcy Rule 9006(b)(1) and face the stringency of the *Pioneer* test.

willfulness standard to include conduct which is deliberate, egregious, or evidencing bad faith.

*See Am. Alliance*, 92 F.3d at 60-61.  Mere careless or negligent errors by an attorney or client do

not constitute "willfulness."  *Id.* at 61.  A court may find willfulness where there is "bad faith, or

at least something more than mere negligence."  *Id.* at 60.  "The subjective inquiry into

willfulness effectively distinguishes those defaults that, though due to neglect, are excusable,

from those that are not."  *Id.* at 61.  "To a significant extent, this test is akin to the clean hands

doctrine applicable to all equity cases."  *In re JWP Info. Servs., Inc.*, 231 B.R. 209, 212 (Bankr.

S.D.N.Y. 1999)

While it was proper for the Debtor to serve the Claim Objection on the Movants at the

980 Madison Avenue address,[6] the Movants have adequately rebutted the presumption that they

received notice of the Claim Objection.[7]  Specifically, Mr. Peck explained ACG's procedures for

receiving and forwarding mail to the proper recipients at ACG.  (Peck Aff. ¶¶ 36-41.)  Ms.

Iartchouk further confirmed the Movants' mail-receipt procedures and described her duties in

forwarding mail received to the relevant person concerned.  (Iartchouk Decl. ¶¶ 4-9.)  Both Mr.

---

[6]    The Movants broadly assert that they moved offices "on or about January 2012," but fail to state any specific date on which they actually moved.  The Debtor served the Claim Objection on January 12, 2012 on the Movants' "president" at 980 Madison Avenue – suite 305, New York, New York 10075.  (ECF Doc. # 119.)  This address was listed on their Original Claim and is currently listed as the Movants' address on their website, www.artcapitalgroup.com.  Therefore, the Court finds that the Debtor purportedly sent notice of the Claim Objection to the correct address for the Claimants.  However, in light of the evidence presented, it appears that the Claimants did not receive notice of the Claim Objection.

[7]    Courts in this circuit follow the so-called "mailbox rule" with respect to service of process by mail.  A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed."  *In re WorldCom, Inc.*, No. 02-13533, 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005) (AJG); *see also Hagner v. U.S.*, 285 U.S. 427, 430 (1932).  The sender must provide evidence of actual mailing in the form of an affidavit submitted by an individual who supervised the mailing to allow the presumption to arise.  *See In re WorldCom, Inc.*, 2005 WL 3875192, at *3 (citing *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 104-05 (Bankr. S.D.N.Y. 1997) (finding that an affidavit submitted by the president of the company stating that he oversaw the mailing of claims packages was sufficient to trigger the presumption that the claimants received the packages).  This presumption of receipt is "very strong" and "can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary."  *FairPoint*, 462 B.R. at 81 n.7 (Bankr. S.D.N.Y. 2012)

Peck and Ms. Iartchouk declared that the Movants had not received any notices pertaining to the Claim Objection.  (Peck Aff. ¶ 40; Iartchouk Decl. ¶¶ 8-9.)  Thus, if the Claimants did not receive notice of the Claim Objection, their failure to respond to it could not have been willful.

However, the Court questions the Movants' failure to timely act when they learned about the Order.  Particularly, Mr. Peck states that "[t]he Movants first became aware that [the Original Claim] had been expunged on or about the second week of May 2012 . . . ."  (Peck Aff. ¶ 35.) However, the Movants did not file their Motion until July 23, 2012, over two months after learning of the Order and five months after the Order was entered.  This delay, while likely not the result of bad faith, should have been minimized.  In the context of a motion to reconsider an order, parties should file a motion as soon as they discover that grounds may exist to warrant reconsideration.  *See FairPoint*, 462 B.R. at 83 (finding that a creditor who filed a motion to reconsider an order only eleven days after learning of the order acted promptly); *see also In re JWP Info. Servs., Inc.*, 231 B.R. at 210 ("It is [the movant's] actions after he became aware of the . . . motion . . . that reaches the level of willfulness.").

> ### b.  The Claimants Do Not Have a Meritorious Defense to the Claim Objection

The second factor in the Second Circuit's three-prong test is whether the movant has a legally supportable defense or position within the underlying litigation.  *Am. Alliance*, 92 F.3d at 61.  In determining whether a defense is meritorious, the Second Circuit has held that such defense "need not be ultimately persuasive at this stage."  *JWP Info. Servs.*, 231 B.R. at (citing *Am. Alliance*, 92 F.3d at 61).  Rather, "[a] defense is meritorious if it is good law so as to give the fact finder some determination to make."  *Id.*  The Claimants do not have a meritorious defense to the Claim Objection.  According to the face of the Settlement Stipulation and the relevant assignment documents, the Claimants assigned all of their claims against the Debtors to

SageCrest, and ACG Finance assigned its lien to SageCrest.  The Movants do not assert that

ACG Credit or ACG Finance (the entities that assigned their rights to SageCrest) have valid

claims against the Debtors.  Rather, the Movants' only argument is that the expunged claim

should be reinstated so that Fine Art, which did not file a claim, can be "added" to the Original

Claim, but on a basis and for an amount not included in the Original Claim.

The Movants' sole purpose for bringing this Motion is to assert a claim for Arranger's

Fees and Default Sales Fees.  Fine Art is the only Movant that could possibly have a claim for

Arranger's Fees or Default Sales Fees.  However, even if Fine Art was entitled to certain fees,

Fine Art failed to file a timely proof of claim in the Debtor's case and has not shown it should be

permitted to file an untimely claim under the *Pioneer* factors.[8]  Fine Art's proof of claim would

be denied as a late-filed claim.[9]  Thus, even if the Court were to grant reconsideration of the

Motion, the Movants did not and currently do not have a meritorious defense to the Claim

Objection and, as explained below, would not be entitled to amend the Original Claim to the

extent proposed.

> c.   <u>Reconsidering the Claim Objection Would Be Highly Prejudicial to the
> Debtor</u>

Additionally, if allowed as a general unsecured claim, the proposed amended claim

would increase the total amount of projected allowed general unsecured claims by 23.6%, from

approximately $13,032,534.00 to approximately $16,107,534.00.  (Grubin Aff. ¶ 11.)  The

substantial amount of the proposed amended claim, both in dollar amount and on a percentage

basis, establishes that reconsideration and vacatur of the Order would be highly prejudicial to the

---

[8]    Fine Art would probably fail to satisfy the *Pioneer* factors because it undoubtedly knew about the Bar Date since its affiliates, ACG Credit and ACG Finance, timely filed the Original Claim.

[9]    In an apparent attempt to portray Fine Art's alleged claim as an amendment rather than as a new claim (presumably because the standard for filing late new claims is more stringent) the Movants provide no information on and attach no documentation to the proposed amended claim to support the existence or calculation of Fine Art's alleged claim or to support their assertions that such claim is secured.

Debtor and its estate.  Additionally, the Debtor and SageCrest represent that the expungement of

the Original Claim was a major consideration underlying the global settlement between the

Debtor, Ramis, and SageCrest, which is incorporated in the Debtor's chapter 11 plan (ECF Doc.

# 168).  (Debtor's Obj. ¶ 43; SageCrest Obj. at 4.)  If the Original Claim or proposed amended

claim was now allowed, the global settlement and the proposed plan would need to be reworked

completely.  Based on these facts, there would be significant prejudice against the Debtors if the

Order were now vacated.

2. *The Order is Not Void*

With respect to the Movants arguments under Rule 60(b)(4), which authorizes the Court

to relieve a party from a void judgment, the Movants incorrectly assert that the Order is void

because "the Debtors' attempt to avoid the Movants' security interests over the collateral was

inconsistent with the due process protections required by the Rules of Bankruptcy Procedure."

The Movants' argument is unavailing because the Claim Objection did not seek to expunge the

Original Claim because of any purported lien; rather, the Debtor objected to the Original Claim

only on the basis that both of the Claimants (ACG Credit and ACG Finance) had assigned all of

their interests in the Original Claim to SageCrest in May 2008.  Since the Claimants had

assigned their lien prior to the filing of this case, and Fine Art never filed a claim asserting a lien,

Bankruptcy Rule 7001 is not relevant.  The Order did not affect any lien, and the Order is

therefore not void.

**B.  The Amendment Proposed by the Movants is Improper**

For the reasons explained above, the Movants have failed to carry their burden under

Rule 60(b).  The Court, therefore, need not reach a decision whether to allow the Claimants to

amend the Original Claim.  However, even if the Order was void or the Court found that the

Movants' inactions were due to excusable neglect, the Court would deny the Movants' request to amend the Original Claim.

In the Second Circuit, courts apply a two-prong test to assess whether to permit amendment of a proof of claim. *See In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005); *In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993); *In re Sneijder*, 407 B.R. 46, 54 (Bankr. S.D.N.Y. 2009); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 95 (Bankr. S.D.N.Y. 2007). First, the court must determine whether there was an "'assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" *Enron*, 419 F.3d at 133 (quoting *Integrated*, 157 B.R. at 70); *Enron*, 370 B.R. at 95. "An amendment will meet this threshold if it: '1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim.'" *Enron*, 419 F.3d at 133 (quoting *Mclean Indus.*, 121 B.R. at 708). "If the first prong is satisfied, the court must then determine whether it would be equitable to allow the amendment." *Enron*, 419 F.3d at 133; *Integrated*, 157 B.R. at 70; *Sneijder*, 407 B.R. at 55; *Enron*, 370 B.R. at 95. "The second prong is to be applied only if the first prong is satisfied and the claim qualifies as an amendment and not simply a new claim." *Enron*, 370 B.R. at 95 (citing *Integrated*, 157 B.R. at 46).

In determining whether the first prong of the test is satisfied, courts in this jurisdiction have applied Rule 15(c) of the Federal Rules of Civil Procedure, pursuant to Bankruptcy Rules

7015 and 9014(c), to analyze such an amendment.[10]  *See Enron*, 419 F.3d at 133.  Here, the proposed amendment would be asserting a new claim against the Debtor's estate.  An entirely new claimant, Fine Art (which was not listed on the Original Claim), is seeking to assert a claim against the Debtor for certain fees, which were not referenced as part of the Original Claim.  The Original Claim states that it is based on "money loaned" and attached only the Note.  The Arranger's Agreement was not annexed to or even mentioned in the Original Claim.

Fine Art's claim is a new and different claim; it is based on a different agreement—the Arranger's Agreement—rather than the Note on which ACG Credit's and AGC Finance's claim (now belonging to SageCrest) was based, and for an amount that was not included in Claim No. 43, and that was payable to Fine Art and not to ACG Credit or ACG Finance.  Finally, the Debtors have adequately shown that allowing the Claimants to amend their Original Claim at this late juncture to add a claim on behalf of Fine Art would significantly prejudice the Debtors' chances of reorganization.

---

[10]      Rule 15 of the Federal Rules of Civil Procedure is entitled "Amended and Supplemental Pleadings."  The relevant provision is Rule 15(c)(1)(B), providing that:

> (c) Relation Back of Amendments.
>
>       (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
>             (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set—out or attempted to be set out—in the original pleading[.]

Fed. R. Civ. P. 15(c)(1 )(B).

### III.    CONCLUSION

The Movants have failed to carry their burden under Rule 60(b).  And, even if the Court found that the Movants satisfied their burden under Rule 60(b), the proposed amendment would be denied as a matter of law.  Accordingly, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

Dated:     August 22, 2012
           New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge